**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JUANITA CHAVEZ, INDIVIDUALLY AS SURVIVING WIFE AND AS REPRESENTATIVE OF THE ESTATE OF PABLO CHAVEZ, | § § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-07-2097 |
| GHS PROPERTY AND CASUALTY INSURANCE COMPANY, FOR ITSELF AND AS SUCCESSOR IN INTEREST TO MEMBER SERVICE LIFE INSURANCE COMPANY, | § § § § § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This case arises out of a claim for accidental death benefits under a policy issued by Member Service Life Insurance Company. Juanita Chavez, the decedent's wife, alleges that GHS Property and Casualty Insurance Company ("GHS"), the successor-in-interest to Member Service Life Insurance Company, wrongfully refused payment. Chavez sued in state court, asserting claims under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 101, *et seq.*, and the Texas Insurance Code and Deceptive Trade Practices Act. Chavez also asserted state common-law causes of action for breach of contract and breach of the duty of good faith and fair dealing. GHS timely removed to federal court on the basis of federal-question jurisdiction. (Docket Entry No. 1).

GHS now moves for summary judgment on the grounds that it did not violate ERISA in denying the benefit claim and that the state-law claims are preempted. (Docket Entry No. 13). Chavez has responded, (Docket Entry No. 14), and GHS has replied, (Docket Entry No. 15). GHS has also filed a motion to strike experts. (Docket Entry No. 10).

Based on the motion, response, and reply, the record, and the applicable law, GHS's summary judgment motion is granted. GHS's motion to strike experts is denied as moot. The reasons are explained below.

## I.     Background

Pablo Chavez worked in a radiator shop for thirty years before retiring in 1986. When he retired, he began working for his brother, Jose Chavez, who owned El Panal Radiator Shop. Pablo Chavez worked as El Panal's manager from 1986 until his death on June 1, 2005. Pablo Chavez died after a vehicle accident. The van he was driving to deliver a repaired radiator to an El Panal customer collided with another vehicle at an intersection. The police report stated that Pablo Chavez failed to yield the right of way at a stop sign and that he suffered no injury in the collision, which occurred around 6:30 p.m. that day. (AR 100087–88).[1] Later that same day, according to a report from the Houston Fire Department, Pablo Chavez began experiencing chest pain. He was taken to a hospital emergency room, arriving at 8:50 p.m.   The emergency room records show that Pablo Chavez was experiencing chest pain when he arrived; became unresponsive while waiting for treatment;

---

[1] The documents in the Administrative Record are cited by their bates numbers (*e.g.*, "AR 1").

could not be resuscitated; and was pronounced dead at 9:50 p.m. (AR 100240, 100241, 100248). The death certificate stated that the cause of death was "natural." The immediate cause of death was an anterior myocardial infarction with underlying causes of coronary artery disease, hyperlipidemia, and hypertension. (AR 100197).

Juanita Chavez, Pablo Chavez's wife, filed a claim for accidental death benefits under an occupational accident insurance policy issued by Member Service Life Insurance Company. The policy had an effective date of March 31, 2005 and was issued as part of an ERISA benefits plan that Jose Chavez established to provide benefits to the employees of the three businesses he owned, including El Panal. The plan covers "active employees" who are insureds and suffer an "accidental bodily injury." GHS denied Juanita Chavez's claim on the ground that Pablo Chavez did not qualify as an "active employee" or suffer an "accidental bodily injury" under the plan terms. Juanita Chavez appealed the denial, without success. This lawsuit followed.

The issues on summary judgment are whether, as a matter of law, GHS did not violate ERISA in denying the accidental death benefit claim and whether the state law claims are preempted. Juanita Chavez argues that "[t]here is credible evidence in the administrative record" to support her claim for ERISA benefits, but does not address GHS's preemption argument. (Docket Entry No. 14 at 3). Both issues are analyzed below.

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving

3

party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 304 (5th Cir. 2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

**III.  The ERISA Claim**

    **A.  The Legal Standard**

The Employee Retirement Income Security Act ("ERISA") furnishes district courts with jurisdiction to review determinations made by employee benefits plans, including accidental death insurance plans. *See* 29 U.S.C. § 1132(a)(1)(B); *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir.2004). An ERISA plan administrator's factual determinations are reviewed for abuse of discretion. *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 231 (5th Cir. 2004); *see also Martin v. SBC Disability Income Plan,* 257 Fed. Appx. 751, 753–54 (5th Cir. 2007). An abuse of discretion occurs when a claim is denied "[w]ithout some concrete evidence in the administrative record." *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 332–34 (5th Cir. 2001). "Under the abuse of discretion standard, if the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)) (internal punctuation omitted). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence;" the fiduciary's decision must be affirmed if it is supported by substantial evidence. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (internal quotation marks omitted). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis*, 394 F.3d at 273.

In resolving factual disputes as to the merits of an ERISA claim, the court's review is limited to the administrative record. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 300

5

(5th Cir. 1999). The plaintiff bears the burden of demonstrating that she is entitled to benefits under the plan's terms. *See Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 (5th Cir. 1993); *see also Lewis v. CNA Group Life Assurance Co.*, 414 F. Supp. 2d 652, 654–55 (S.D. Miss. 2006). This court must determine whether substantial evidence exists to show that GHS's decision to deny benefits was reasonable. *Ellis*, 394 F.3d at 273; *Vega*, 188 F.3d at 298; *Gooden*, 250 F.3d at 331. Because GHS is a plan administrator that both evaluates claims for benefits and pays benefits, it has a conflict of interest. *See Metro. Life Ins. Co. v. Glenn*, No. 06-923, slip op. at 5–8 (U.S. June 19, 2008). A reviewing judge must take account of this conflict in determining whether the administrator has abused its discretion, but such a conflict is not necessarily outcome-determinative in the court's fact-driven inquiry. *See id.* at 11 (noting that any one factor in the court's analysis "will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance").

The parties dispute whether Pablo Chavez was an "employee" and whether he suffered an "accidental bodily injury." The evidence as to both these disputed factual issues is examined below.

### A. Was Pablo Chavez an "Employee" Under the Plan Terms?

The Plan states that it "applies only to the groups of Insured Persons described below," including "All Active Employees." (AR 100418). The Plan defines an "employee" as follows:

> [An] Employee is a person directly employed by you [Jose Chavez], whose salary is paid directly by you, and whose salary

6

> is subject to all applicable state and federal income taxes. An Employee does not include sub-contractors or independent contractors, whether they are employed by you on an occasional, part-time or full-time basis.

(AR 100423–424). The Plan defines an "insured" as "a person eligible for coverage under the Policy and for whom [GHS has] accepted premium." (AR 100425). The Plan further states:

> In order for an Employee to be covered under the Policy, the Policy holder must report all required information for that Employee to the Texas Workforce Commission on the Employer's Quarterly Report for the months the Employee is to be covered and pay the premium to us on or before the Premium Due Date.
>
> If the Employee's name is not reported to the Texas Workforce Commission and premium paid on or before the Premium Due Date, coverage for such Employee will not be effective until premium is paid and documentation acceptable to Us is submitted which verifies the Employee was eligible and Actively at Work on the requested effective date.

(AR 100435).

To support her claim, Juanita Chavez points to affidavits in the administrative record from Jose Chavez, herself, and two El Panal employees, Mentor Hernandez and Jose Luis Salazar, confirming that Pablo Chavez worked as the manager at El Panal. (AR 100179, 100183, 100186, 100189). In response, GHS points out, and Juanita Chavez does not dispute, that "[t]here is no evidence in the Administrative Record that Jose Chavez reported the required employee information for Pablo Chavez to the Texas Workforce Commission on the Employer's Quarterly Report for the purposes of state and federal income taxes."

(Docket Entry No. 13 at 5). A Form 1099-MISC from the 2004 tax year shows that Pablo Chavez received $9,000 in nonemployee compensation. (AR 100090). The administrative record does not show that he ever received a Form W-2 from El Panal. The police report from Pablo Chavez's June 5, 2005 car accident shows that he reported his occupation as "retired." (AR 100087). In his affidavit, Jose Chavez states that he paid Pablo Chavez $500 per week in cash because "[w]e were afraid to show that he was working," which could create problems with Pablo Chavez's union retirement benefits. (AR 100179, ¶ 4). In addition, in the March 30, 2005 Employer Application Form and Certification that Jose Chavez filled out to establish the ERISA plan with Member Service, he requested Plan coverage for only two El Panal employees, not including himself or Pablo Chavez. (AR 100055–56). The record shows that those two employees, Mentor Hernandez and Jose Luis Salazar, have been El Panal employees for approximately ten and fifteen years, respectively. GHS argues that "there is substantial evidence in the Administrative Record that Pablo Chavez was not an 'Employee.'" (Docket Entry No. 13 at 8).

"[T]he law requires only that substantial evidence support a plan's fiduciary's decisions, including those to deny or terminate benefits." *Ellis*, 394 F.3d at 273. The administrative record contains substantial evidence supporting GHS's decision to deny Juanita Chavez's claim for accidental death benefits on the ground that Pablo Chavez was not an "employee" covered by Jose Chavez's ERISA plan. Jose Chavez requested coverage for only two employees at El Panal when he established the ERISA plan for employees working at his three businesses. The record shows that those two employees, Mentor

8

Hernandez and Jose Luis Salazar, were long-time El Panal employees. In contrast, Jose Chavez, the owner of El Panal, paid Pablo Chavez in cash and did not report the payments for federal tax purposes; Jose Chavez did not provide the required employee information for Pablo Chavez to the Texas Workforce Commission; Pablo Chavez received a 1099-MISC reporting $9,000 in nonemployee compensation but did not receive a Form W-2. A Form W-2 is used to report wages and other compensation paid to an employee; a Form 1099-MISC is used to report payments made in the course of a trade or business to another person or business who is not an employee. *See Heckler v. Product Dev. Corp.*, No. 3:00-CV-1187-R, 2002 WL 824091, at *1 n.1 (N.D. Tex. Apr. 29, 2002); *see also Bigalke v. Neenah Foundry Co.*, No. 05-C-29, 2006 WL 1663717, at *5 (E.D. Wis. June 9, 2006) (citing http://www.irs.gov/faqs/faq12-2.html). GHS was reasonable in concluding from the evidence in the administrative record that Pablo Chavez was not an insured employee covered by Jose Chavez's ERISA plan. Substantial evidence supports GHS's decision, such that it was not arbitrary or capricious. *See Ellis*, 394 F.3d at 273.

**B.     Was Pablo Chavez's Death the Result of an "Accidental Bodily Injury?"**

The Plan defines an "Accidental Bodily Injury" as "an injury suffered by the Insured while Actively at Work that is the direct result of an Accident when such injury is involuntary and is indirect and independent of all other causes." (AR 100422). An "Accident" is defined as a "sudden an unforeseen event causing loss or injury, which is not due to any fault or misconduct of the Insured, is independent of all other causes and occurs while the insured is Actively at Work." (*Id.*). An insured employee is "Actively at Work"

9

if he is "working for You [Jose Chavez, the employer] on a Permanent Basis" and "performing the material and substantial duties of [his] regular job," either "at the employer's "usual place of business," "[a]t a location to which [the employer's] business requires the Insured to travel," or "while traveling between" the employer's "usual place of business" and "a location to which [the employer's] business requires the Insured to travel." (*Id.*).

GHS argues that there is "substantial evidence that Pablo Chavez'[s] death was not the result of an 'Accidental Bodily Injury' under the ERISA plan." (Docket Entry No. 13 at 9). GHS notes that the police report of Pablo Chavez's June 5, 2005 accident shows that he suffered no injury due to the collision. (AR 100087–88). GHS also emphasizes that Pablo Chavez's death certificate identifies his cause of death as "anterior myocardial infarction," caused by coronary artery disease, hyperlipidemia, and hypertension. (AR 100197). Pablo Chavez's treating physician, Dr. F. Elena Ramirez, signed the death certificate, which stated that the death was due to "natural" causes, not "accident." (*Id.*). GHS points out that neither the Houston Fire Department records, the St. Joseph emergency room records, nor the death certificate mentions Pablo Chavez's car accident as a contributing cause of the myocardial infarction that he suffered the night of on June 5, 2005. The medical records show that Pablo Chavez had a history of coronary artery disease for which he had been treated surgically and medically. (AR 100201).

Juanita Chavez responds by pointing to a November 16, 2005 statement from her husband's treating physician, Dr. Ramirez, which states as follows:

> Mr. Pablo Chavez (DOB:02/20/1928) was an established patient
> of our practice sine 07/12/1996. Mr. Pablo Chavez had a history

10

> of coronary artery disease status post successful angioplasty stent of the circumflex and LAD performed on 4/9/04. On October 21, 2004 he was evaluated by Dr. Ethan Podet and was found to have excellent exercise tolerance and negative sestamibi gated treadmill.
>
> On June 2005 he underwent a motor vehicle accident and a few hours later developed severe chest pain with extensive myocardial infarction and died in the St[.] Joseph emergency room.
>
> It is my opinion that the accident made a significant impact on Mr. Chavez, precipitating his massive infarction and consequently causing his death.

(AR 100075). Juanita Chavez argues that GHS decided to deny her benefits claim "without any medical evidence to support [its] decision." (Docket Entry No. 14, ¶ 15).

Juanita Chavez's argument on causation does not raise a fact issue as to her entitlement to accidental death benefits. "Accident" is defined as a "sudden an unforeseen event causing loss or injury, which is not due to any fault or misconduct of the Insured, is independent of all other causes and occurs while the insured is Actively at Work." Even if the 6:30 p.m. vehicle accident was a contributing cause of the chest pain Pablo Chavez began to suffer approximately two hours later, the record does not support an inference that the death resulted from the accident "independent of all other causes." To the contrary, there is ample evidence in the record that the death resulted from a heart attack caused by coronary artery disease. The police report from the accident shows that Pablo Chavez suffered no injury in the collision. Neither the death certificate nor records from the Houston Fire Department's initial response or from St. Joseph's emergency room indicate that the car accident contributed to Pablo Chavez's death. The death certificate states that Pablo

Chavez's death was "natural," due to a myocardial infarction caused by coronary artery disease. Even assuming that the accident was a contributing cause of Pablo Chavez's death, Juanita Chavez points to no evidence in the record showing that the car accident was "independent of all other causes" of Pablo Chavez's death. (AR 100422).

In addition, GHS points out, and Juanita Chavez does not dispute, that Pablo Chavez was not "actively at work" when he began to suffer chest pain. The record shows that Pablo Chavez began experiencing chest pains at home around 8:00 p.m. on June 5, 2005. The record contains substantial evidence supporting GHS's decision to deny the death benefits claim on the ground that Pablo Chavez did not suffer an "accidental bodily injury" covered by the Plan.

### C. Conclusion as to the ERISA Claim

The record contains substantial evidence to support GHS's determination of the facts relevant to the benefits claim. The fact that GHS was operating under a conflict of interest because it both evaluates and pays benefits claims, *see Metro. Life Ins. Co. v. Glenn*, No. 06-923, slip op. at 5–8 (U.S. June 19, 2008), does not change this conclusion. Such a conflict is one factor this court must consider in determining whether the administrator abused its discretion in deciding the fact issues. The evidence in the record supporting the administrator's decision is substantial. The evidence does not present such a close question as to make the conflict of interest determinative. There is no evidence that the conflict of interest affected the benefits administration or this benefits denial. *Glenn*, slip op. at 11–12. Taking into account all the relevant factors, this court concludes that GHS did not violate

ERISA in deciding to deny the claim for accidental death benefits.

## IV. The State-Law Claims

GHS argues that Juanita Chavez's state-law claims are preempted by ERISA because they "all relate to the claim for benefits under the ERISA plan that was denied." (Docket Entry No. 13 at 11). Juanita Chavez did not respond to GHS's preemption argument.

### A. The Legal Standard for ERISA Preemption

Section 502(a) of ERISA, the statute's civil-enforcement provision, provides that a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan. . . ." 29 U.S.C. § 1132(a). This provision has "such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399–400 (3d Cir. 2004) (quoting *Davila*, 542 U.S. at 209). State-law actions within the scope of § 502(a) are recharacterized as federal claims and are removable to federal court. *Pascack Valley Hosp.*, 388 F.3d at 399–400 (citations omitted); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.").

In its most recent analysis of ERISA preemption, *Aetna Health Inc. v. Davila,* 542 U.S. 200 (2004), the Supreme Court held that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent

13

legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." 542 U.S. at 210 (internal quotations and citation omitted) (finding claims "to rectify a wrongful denial of benefits promised under ERISA-regulated plans" which "d[id] not attempt to remedy any violation of a legal duty independent of ERISA" to be completely preempted). If the defendant's alleged state-law liability derives from or depends upon the existence and the administration of an ERISA-regulated benefit plan, then the plaintiff's state-law claims "are not entirely independent of the federally regulated contract itself." *Id.* at 213. "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Id.* at 209. The Fifth Circuit has found that ERISA preempts state-law claims for breach of contract, breach of the duty of good faith and fair dealing, and unfair competition, unfair practices, and unfair and untimely processing of claims in violation of the Texas Insurance Code. *See Ellis*, 394 F.3d at 273–78.

    **B.**    **Are the State-Law Claims Preempted?**

In her original complaint, Juanita Chavez alleged that GHS violated the Texas Insurance Code because it failed "to attempt in good faith to settle [her] claim in a prompt, fair, and equitable manner" and "denied her claim without conducting a reasonable investigation." (Docket Entry No. 1, Ex. A at 5). She further alleged that GHS's actions in denying her claim violated the Texas Consumer Protection Act and breached the insurance contract and the duty of good faith and fair dealing. All these claims derive from and depend

14

on GHS's administration of the ERISA-regulated benefit Plan.  ERISA preemption applies. GHS's motion for summary judgment as to Juanita Chavez's state-law claims is granted.

## V.     Conclusion

GHS's summary judgment motion is granted.  GHS's motion to strike experts is denied as moot.  A final judgment will be entered by separate order.

SIGNED on June 23, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge